# JOHN B. ADAMS

*vs.*

## CHAUNCEY A. HORR ET AL.

1. At common law one having the right of entry upon lands could lawfully take and retain possession thereof by force provided he used no more force than was necessary to effect his purpose.
2. In a criminal proceeding under the acts of 5th. and 15th Rich. II, for forcible entry and detainer the complaint must be in writing, under oath and must be certain as to the facts, circumstances and intent constituting the offense. If it be vague and uncertain in its description of the place, or fail to allege the expulsion of the complainant from the premises it will be quashed.

Decided February 27, 1864.

*Certiorari* to review proceedings of Justices of the Peace in a complaint, under the statutes of 5th and 15th Rich. II, for forcible entry and detainer. Heard in the General Term in the first instance.

The FACTS are sufficiently stated in the opinion.

MR. M. THOMPSON for plaintiff.

MESSRS. BRADLEY and STONE for defendant.

MR. JUSTICE FISHER delivered the opinion of the Court:

This is a proceeding, not for the purpose of restoring to the relator the property of which he claims to have been possessed, but for the purpose of imposing a fine and imprisonment upon the defendants, and is based upon certain British statutes now of force in this district—a criminal and not a civil proceeding.

From time immemorial private rights in England, whence we derive our system of jurisprudence, have theoretically at least been held in high respect and veneration. When the common law of Great Britain was in its infancy, when society was rude and comparatively unorganized, and when

courts of justice were more rarely open and less accessible and less facile in their forms of proceeding than the advance of civilization has made them, men were frequently constrained to rely upon the strength of their own right arms and the aid of their friends and retainers to assert and maintain their individual claims to the possessions to which by justice and right they were entitled. Hence it was declared by the courts in the early days of English jurisprudence, that no man was punishable at the common law for the exercise of force or the use of the strong hand in demanding and obtaining the possession of lands and tenements into which the right of entry was given by law. In other words, every man had the right to take possession of his own lands, and to turn out and keep out all intruders and interlopers by force, so long as he should measure that force by the necessity of his case in securing and retaining possession of his lawful property.

In the exercise of this natural right, he was not responsible to society in the way of indictment or other criminal proceeding. In the progress of society, however, it was found that individuals, in having recourse to violent methods of doing themselves justice, inspired terror in the community, and thereby disturbed the public peace and tranquility. For this reason it was deemed prudent by the English law-givers of the fifteenth century to put an end to the enforcement of rights of entry by individual power, and remit all persons seeking restitution of their estates in lands to the more powerful remedies of law. Before these enactments, he alone was liable to indictment for forcible entry who had no right of entry upon the lands of which he had taken forcible possession, ( *Vide* Dalt., 297; 1 Hawk. P. C., ch. 64, secs. 1, 2, 3; 3 Bac. Abr., Tit. For. Ent.) Among the Romans it was otherwise. There the civil law, in its anxiety to preserve and protect the peace, and good order of the community, had made it a criminal offense, even in the rightful owner of an estate, to take possession of it by force and violence.

The first modification of the common law of England on the subject of forcible entry was that which took place in the reign of Richard II, by the enactment of that which is known as the statute of 5 Rich., II chap. 8.

The words of this statute are as follows: "And also the king defendeth that none from henceforth make *any* entry into any lands and tenements, but in case where entry is given him by the law, and in such case not with strong hand nor with multitude of people; but only in peaceable and easy manner, and if any man from henceforth do to the contrary and thereof be duly convicted, he shall be punished by imprisonment of his body and thereof ransomed at the king's will." This statute, it will be seen, made it a criminal offense in him who, though entitled by law to his entry into his own land, should make that entry with strong hand, and the punishment was imprisonment, &c. As no provision is made in this act for the mode of conviction, nor any specific tribunal before which the offender was to be tried, it follows that the mode of proceeding and the tribunal in which it was to be conducted was to be the same which were provided by the common law against him who had made forcible entry without right; and that was by indictment before a court having criminal jurisdiction. This statute makes no provision for restitution to the party injured, nor does it provide against forcible detainer unaccompanied by forcibly entry.

Thus the law remained for a period of some ten years, when, to meet the supposed necessities of society and to remedy the omissions in the former act, it was enacted by 15 Rich. II. ch. 2, that "*on complaint* of forcible entry into lands or other possessions whatsoever, to the justices of the peace, or any of them, the justices or justice take sufficient power of the county and go to the place where the force is made, and if they find any that *hold such place forcibly after such entry*, they shall commit them to the next jail, there to abide, *convict by the record*, of the same justices or

justice, until they make fine and ransom; and that the people of the county and the sheriff shall assist, &c., on pain of imprisonment and fine."

This statute does not apply to the case of forcible detainer merely where the entry was not forcible, but only to the case of forcible entry followed by forcible detainer, and the justices, in order to have jurisdiction for the purpose of punishing the offender, must act upon complaint, and must also, when they arrive on the premises, find the offender still remaining there and *holding* forcibly.

Thus it will appear that whereas at the common law before the passage of either of these acts, no one could be punished for forcible entry and detainer but him who made the entry without right, and then only by indictment before a court of general criminal jurisdiction. Now, by the effect of these two statutes of Richard, a new offense was created, to wit, an entry with strong hand by him who had right of entry, and jurisdiction is conferred upon inferior officers of the law to execute those statutes.

Inasmuch, then, as their new offense was created by the statute which did not exist at the common law, and the more especially as the summary proceeding therein provided for is a penal proceeding before a special jurisdiction, the record of the justices must show everything necessary to bring the defendant within the purview of the statute, (Proctor *vs.* The State, 5 Harr., 387). There must, first of all, be a complaint made, and that complaint must be in writing, and be a part of the record in the case. It should be made as other criminal complaints are made, under oath; and as it is to stand in the place of the indictment, like that proceeding, it must be certain to a certain intent in general; that is to say, it must be certain as to the facts, circumstances and intent constituting the offense. Now one of the principal facts making up the offense of forcible entry is locality—the place where the offense is charged to have been committed; and the law is well settled, that in

an indictment for this offense, if there be the slightest variance between the indictment and the evidence as to the name of the parish or place where the house is situated, or in any other description given of it, that variance will be fatal. (Ren. *vs.* Riddley, R. & R., 515.) It is equally fatal if the place stated is an uncertain or impossible place, or one which does not exist within the justice's jurisdiction. It is also · insufficient in a complaint of this character to charge the defendant generally with having committed the offense, all the facts and circumstances which constitute it must be *specifically* set forth. It will not do for the defendant to be charged with having made *forcible entry*, but it must be set forth that with *force and arms and with strong hand* he did forcibly enter, and the complainant, from the peaceable possession, &c., then and there, with force of arms and with strong hand, unlawfully did expel, &c. It will not suffice that the defendant be charged with the removal of complainant's furniture, a removal and expulsion of complainant himself must be charged.

As the case we are now considering was a proceeding of a criminal or penal character, and not one seeking restitution, we have only referred to the acts of 5 and 15 Rich. II, because they are the only ones which relate to forcible entry in its criminal aspect. We make no observations in this case in reference to the statutes of 8 Henry VI, 31 Eliz., or 21 Jac., because they relate only to the proceeding for restitution.

The complaint in this case was made in writing and under oath. But it is excepted to on five several grounds:

1st. For that it is vague and uncertain in its description of the place of the alleged forcible entry and detainer. We believe this exception to be well founded, for the place described in it is No. 450 Sixth Street north, between E and F Streets west, in this city. There is no such place in the city, and cannot be.

2d. The second exception is that it sets forth only a tres-

pass in the carrying away and detaining the furniture of the complainant. This we also hold to be a fatal exception, as the complaint must set forth the expulsion of the complainant himself.

3d. The third exception goes to the insufficiency of the record of the justices in its statement of the offense. This is equally fatal, because the record must show all the ingredients of the offense.

The 4th and 5th exceptions are denials of the verity of the record, which, while we do not feel warranted in noticing them for the purposes of this case, inasmuch as they are contradictions of a record, not made under oath; yet we think proper to announce here that if a case were brought before us on oath of the defendant, setting forth that a justice or justices had acted corruptly or falsified their record, we would not hesitate to order him or them before this Court, and if on a full investigation it should satisfactorily appear that they had so acted, the proceedings would be quashed and the justices removed from office.

For the reasons we have given, it is the unanimous opinion of the Court that the proceedings before the justices in this case be quashed.